[Cite as *Mordick v. Dayton*, 2012-Ohio-289.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

|  |  |  |
|---|---|---|
| | : | |
| PHILIP MORDICK | | |
|     Plaintiff-Appellant | : | C.A. CASE NO. 24663 |
| | | |
| vs. | : | T.C. CASE NO. 2010 CV 9512 |
| | | |
| | : | (Civil Appeal from |
| CITY OF DAYTON | | Common Pleas Court) |
|     Defendant-Appellee | : | |

. . . . . . . . .

O P I N I O N

Rendered on the 27th day of January, 2012.

. . . . . . . . .

Robert L. Caspar, Jr., Atty. Reg. No. 0039625, 7460 Brandt Pike, Huber Heights, OH 45424
    Attorney for Plaintiff-Appellant

Thomas M. Green, Atty. Reg. No. 0016361, 109 North Main Street, 800 Performance Place, Dayton, OH 45402-1290
    Attorney for Defendant-Appellee

. . . . . . . . .

GRADY, P.J.:

{¶ 1} This is an appeal from a final order of the court of common pleas entered pursuant to R.C. 2506.04.

{¶ 2} Philip Mordick was employed as an officer for the City of Dayton Police Department. On January 16, 2010, Mordick and Officer Erica Cash were patrolling the Third District in Dayton.

Mordick was driving the police cruiser and Officer Cash was a passenger. During the morning hours, Mordick drove the cruiser out of the Third District into the Second District, past his personal residence on Coventry Road and down Smithville Road onto Springfield Street. Mordick told Officer Cash that he was trying to find his girlfriend who had been missing since the night before. Officer Cash informed Mordick that she did not believe his actions were proper. Mordick and Officer Cash then resumed their patrol in the Third District.

{¶ 3} Later that afternoon, between 1:00 and 1:30 p.m., Mordick again returned to the Second District, driving the police cruiser past his residence on Coventry and then heading north on Smithville Road and passing Springfield Street. Mordick recognized his girlfriend's vehicle and turned onto Byesville Boulevard, leaving the City of Dayton and entering the City of Riverside. Mordick parked the cruiser in the yard at 4337 Byesville Boulevard. Mordick used the Mobile Data Terminal ("MDT") in the cruiser to inform dispatch that he and Officer Cash were en route to the police department's gasoline line located at 1830 E. Monument Avenue to fill up the cruiser with gasoline. Mordick then went inside the residence, leaving Officer Cash in the cruiser.

{¶ 4} Mordick was inside the residence for approximately ten minutes. While Mordick was inside the residence, Officer Cash

contacted Sergeant David Wolford and informed him that they were parked in front of a residence on Byesville Road. When Mordick returned to the cruiser, Sergeant Wolford contacted Mordick and asked him where he was located. Mordick responded that he and Officer Cash were at Smithville Road and Springfield Street. Mordick then drove the cruiser to 1830 E. Monument Avenue to refuel the cruiser.

{¶ 5} As a result of Mordick's improper conduct, Sergeant Wolford conducted an investigation of the events of January 16, 2010. Officer Cash, Mordick, and Sergeant Wolford prepared and submitted Special Reports detailing the events of January 16, 2010. Subsequently, Mordick was served with notice of three separate charges against him, alleging improper conduct in violation of Police Department rules. Charge III specifically provided that a violation would result in termination of his employment. The charge alleged a violation of Rule 13, Section 2(B), in that Mordick engaged in "Conduct unbecoming an employee in the public service," and/or Rule 13, Section 2(I), in that Mordick's conduct constituted a "[v]iolation of any enacted or promulgated statute, ordinance, rule, policy, regulation, or other law." The charge contained the following specification:

{¶ 6} On or about January 16, 2010, at approximately 1:30

p.m., you entered false information in the Mobile Data Terminal when you entered your location as 1830 E. Monument Avenue. This is in violation of the Dayton Police Department's Rules of Conduct for Sworn Personnel 8.5, the pertinent provisions of which state:

ROC 8.5

No officer will knowingly falsify any report, document, or record or cause to be entered any inaccurate, false, or improper information on records, documents, or reports of the Department or of any court or alter any record, document, or report except by a supplemental report, document, or report. If an investigation reveals that an officer has violated this section, their employment with the Dayton Police Department will be terminated.

{¶ 7} Mordick entered a plea of no contest to the charges and specifications and waived the departmental hearing before Chief of Police Richard Biehl. After reviewing the evidence, Chief Biehl recommended a finding of guilty of all the charges and specifications and, as to Charge III, that Mordick be terminated from employment. Mordick requested to change his no contest plea, but Chief Biehl had already made a finding of guilty and denied the request.

{¶ 8} The City Manager adopted the findings of Chief Biehl and found Mordick guilty as charged. Mordick was discharged from employment under Charge III, Specification I.

{¶ 9} Mordick appealed to the City of Dayton Civil Service Board ("the Board"), which held a hearing on October 14, 2010. The parties submitted evidence at the hearing. Following the hearing, the Board found that the discharge of Mordick was "in accordance with law and is sustained."

{¶ 10} Mordick appealed to the court of common pleas, which affirmed the Board's decision, finding that the decision of the Civil Service Board was not "unconstitutional, illegal, arbitrary, capricious or unreasonable" and "is supported by the preponderance of substantial, reliable and probative evidence." R.C. 2506.04. Mordick filed a timely notice of appeal.

THIRD ASSIGNMENT OF ERROR

{¶ 11} "THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW AND FACT WHEN IT IMPROPERLY EXPANDED AND CHANGED THE CHARGE AGAINST MORDICK IN ORDER TO UPHOLD THE FINDINGS OF THE CIVIL SERVICE BOARD."

FOURTH ASSIGNMENT OF ERROR

{¶ 12} "THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW AND FACT WHEN IT FOUND THE DECISION OF THE DAYTON CIVIL SERVICE BOARD WAS SUPPORTED BY A PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE."

{¶ 13} We will address the third and fourth assignments of error together as they are interrelated.

{¶ 14} In *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147-48, 2000-Ohio-493, at ¶ 13-14, the Supreme Court explained the standard of review to be applied in reviewing R.C. Chapter 2506 administrative appeals:

> Construing the language of R.C. 2506.04, we have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.

> The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "more limited in scope." (Emphasis added.) *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 30, 465 N.E.2d 848, 852. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not

include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court."

{¶ 15} The court of common pleas correctly found that the preponderance of substantial, reliable, and probative evidence supported the Board's order. Officer Cash and Sergeant Wolford testified that Mordick knowingly falsified his location as 1830 E. Monument Avenue on January 16, 2010. Mordick also prepared a Special Report that established this fact. During the time Mordick stated that he was en route to or at 1830 E. Monument Avenue, Mordick was actually outside the City of Dayton. The entry of false information into the MDT, as established by the testimony of Officer Cash and Sergeant Wolford, along with the Special Reports prepared by Mordick, Officer Cash, and Sergeant Wolford, supports the trial court's decision.

{¶ 16} Mordick argues that the evidence can be construed to find that he was "en route" to the location he entered in the MDT, which undermines the finding of the Board that he made a false report of his location. However, Mordick's argument is undermined by a number of facts.

{¶ 17} First, Mordick entered that information in the MDT when he was instead either heading to or parked in front of a house located outside the City of Dayton, where Mordick had gone in search

of his girlfriend. Mordick then entered the house before proceeding to the Monument Avenue location. The Board was entitled to rely on that evidence to find a false report.

{¶ 18} Second, Mordick entered a plea of no contest to the charge of making a false report when he was presented with the three charges or specifications against him. The false report specification, if found, requires a termination.

{¶ 19} Third, the Special Reports prepared by Officer Cash, Sergeant Wolford, and Mordick, all support the finding that Mordick intentionally entered false information into the MDT. For example, Exhibit 9 at the hearing before the Board was a January 25, 2010 Special Report signed by Mordick. The Report states, in part:

> Around 0800 hours, I first drove by my home and then down Smithville Rd toward Byesville Bl. I turned onto Byesville Bl and turned right around after not seeing her van. The second time, around 1330 hours, after clearing our 11 I once again drove by my house and then down Smithville Rd. To Byseville Bl. I at this time put our disposition as enroute to the gas line. As I turned onto Byesville Bl. I saw her van and stopped in to speak to her and inquire of her whereabouts. I was inside the residence for approximately ten minutes at

which time there was no arguing or physical fighting between Shonda and myself. Upon leaving, dispatch called us on the radio and I gave the location of Findlay and Springfield; although, we were actually at Smithville and Springfield.

{¶ 20} We find equally unpersuasive Mordick's argument that the Board and the court of common pleas changed the nature of Charge III in order to terminate Mordick's employment. Rather, the evidence of record, including the Special Reports and testimony of Officer Cash and Sergeant Wolford, and Mordick's Special Report and his no contest plea, supports the finding that Mordick was guilty of Charge III, which requires his dismissal from employment.

{¶ 21} The third and fourth assignments of error are overruled.

FIRST ASSIGNMENT OF ERROR

{¶ 22} "THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW AND FACT WHEN IT CONSIDERED FACTS THAT WERE NOT ADMITTED INTO EVIDENCE AT THE HEARING BEFORE THE DAYTON CIVIL SERVICE BOARD TO UPHOLD THE BOARD'S ORDER."

{¶ 23} Mordick argues that the court of common pleas improperly considered evidence that was not admitted into the record. In particular, Mordick argues that Exhibits 1, 2, 3, 4, 11, and 12 were not admitted into evidence at the hearing but that the court of common pleas nevertheless reviewed these exhibits. It does

not appear that Mordick takes issue with anything in particular in Exhibits 1, 2, 3, 11, or 12, and our review of the decision of the court of common pleas does not indicate that the court placed any reliance on these exhibits. Mordick points out that the court of common pleas "used General Order 1.07-01 Communications as a basis for its decision," and that General Order was never admitted into evidence.

{¶ 24} On pages 12 and 13 of its Decision and Order, the court of common pleas references General Order 1.07-1. The court stated, in part:

> The aforementioned communication general orders suggest that an officer is expected to advise dispatch, whether by radio or MDT of their location. The general orders also suggest to the court that getting out of the cruiser and being in a residence for ten minutes could not be consistent with being "en route" to a location.

{¶ 25} The court of common pleas made no further reference to General Order 1.07-1. Rather, the court pointed out that the testimony and the Special Reports of record supported the Board's decision to affirm Mordick's termination from employment. This testimony and the exhibits containing the Special Reports were admitted into evidence and constitute a preponderance of substantial, reliable, and probative evidence that supports the

Board's decision.  Therefore, the court of common pleas did not err as a matter of law in affirming the Board's order.

{¶ 26} The first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 27} "THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW AND FACT WHEN IT DECIDED THAT THE CIVIL SERVICE BOARD GAVE MORDICK A DE NOVO HEARING."

{¶ 28} Mordick argues that the court of common pleas erred when it found that the Board gave Mordick a de novo hearing.  According to Mordick, the only evidence the Board specifically referred to in its Order affirming Mordick's discharge from employment was Mordick's no contest plea.  Therefore, Mordick argues:

> since the Order of the Civil Service Appeal is based on Mordick's no contest plea, a de novo hearing by the Board, which is required, was not performed.  All of the other evidence cited by the Board in its Conclusions as the basis for its Order is spoken in generalities and it is clear that the Board is using the no contest plea as the legal basis for its upholding the termination of Mordick.  (Mordick Appellate Brief, p. 7.)

{¶ 29} The Board's reference to or reliance upon Mordick's prior no contest plea does not mean that the Board necessarily failed to give Mordick a de novo hearing.  *Black's Law Dictionary* 725

(7th Ed. 1999) defines "hearing de novo" as "1. A reviewing court's decision of a matter anew, giving no deference to a lower court's findings. 2. A new hearing of a matter, conducted as if the original hearing had not taken place."

{¶ 30} It is undisputed that the Board held a hearing in which it accepted testimony and reviewed exhibits submitted by the parties. The Board's findings of fact and conclusions of law demonstrate that it did more than rely solely on Mordick's no contest plea. The fact that a portion of the evidence received by the Board included the prior no contest plea Mordick entered does not establish that the Board failed to give Mordick a new hearing. A de novo hearing does not mean a hearing that ignores every piece of evidence that was introduced in a prior administrative hearing.

{¶ 31} The court of common pleas did not err when it found that the Board gave Mordick a de novo hearing. The second assignment of error is overruled.

{¶ 32} Having overruled the assignments of error, we will affirm the judgment of the trial court.


FAIN, J. and KLINE, J. concur.

(Hon. Roger L. Kline, Fourth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).


Copies mailed to:

Robert L. Caspar, Jr., Esq.
Thomas M. Green, Esq.
Hon. Mary Katherine Huffman