[Cite as *Durell v. Spring Valley Twp. Bd. of Zoning Appeals*, 2012-Ohio-5098.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

BILL DURELL, et al.                          :

     Plaintiff-Appellee                     :         C.A. CASE NO.    2012 CA 23

v.                                           :         T.C. NO.    09CV402

SPRING VALLEY TOWNSHIP                       :         (Civil appeal from
BOARD OF ZONING APPEALS, et al.                        Common Pleas Court)

     Defendant-Appellant                    :

                                      :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ____2nd____ day of ____November____, 2012.

· · · · · · · · · ·

B. RANDALL ROACH, Atty. Reg. No. 0065537, 26 N. Wright Avenue, Fairborn, Ohio 45324
     Attorney for Plaintiff-Appellee

ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
     Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

{¶ 1}    The Spring Valley Township Board of Zoning Appeals ("the BZA") appeals from a judgment of the Greene County Court of Common Pleas, which found that

the BZA had acted in a manner inconsistent with prior court judgments and had "discriminated against [Bill] Durell" when it granted a variance for property owned by Patrick Mahaffey after denying a similar request by Durell for a variance related to his own adjoining property. The trial court's judgment remanded the matter to the BZA to be "sort[ed] out."

{¶ 2}    For the following reasons, the judgment of the trial court will be affirmed as modified.

*Background and Procedural History*

{¶ 3}    The property at issue in this zoning dispute was originally one large parcel of wooded land, owned by Mahaffey, abutting Spring Valley-Paintersville Road east of Cemetery Road, in an A-10-Prime Agricultural District. The property encompassed approximately 100 acres and had a long, somewhat rectangular shape, with the northernmost narrow end abutting the road. Before the events at issue in this case, Mahaffey divided and sold two parcels of land along the roadway; he retained ownership of approximately 88 acres, which was then landlocked. He also retained or subsequently obtained a 25-foot wide access easement along the western edge of the property he had previously owned, from the landlocked property to Spring Valley-Paintersville Road.

{¶ 4}    In 1995, Mahaffey requested a variance from the BZA regarding his 88 landlocked acres. He sought to create five parcels of at least ten acres each for residential development, which would have access to Spring Valley-Paintersville Road via a private drive on the 25-foot access easement, but which would lack the 350-foot road frontage normally required in an agricultural district. The BZA denied this request.

{¶ 5} Mahaffey appealed from the BZA's denial of the variance, but the parties subsequently reached an agreement, which was approved by the trial court (Greene Case No. 95 CV 0461) ("the 1997 agreed judgment"). The agreed judgment provided, in pertinent part:

There shall be a maximum of three (3) houses built on three (3) surveyed ten (10) acre tracts along the private lane leading from Spring Valley-Paintersville Road southwardly to the said three (3) ten (10) acre tracts along the westerly boundary line of [Mahaffey's] property.

{¶ 6} The first lot that Mahaffey sold after the 1997 agreement was an 18-acre lot farthest from the road, which was purchased by a predecessor in interest to Durell; a house was not immediately built upon the property. Two additional lots of approximately 10 acres each were sold to Mitchell and Bott (or their predecessors in interest), and houses were built on those properties. A third 10-acre lot (albeit the fourth lot) was also created; Mahaffey apparently built a house on this lot, and later sold the developed property to the Millers or their predecessors in interest. Mahaffey retained ownership of approximately 22 acres. It is unclear why the first lot created after the 1997 agreement was 18 acres, rather than 10 acres, and why Mahaffey sold three additional lots when, pursuant to the 1997 agreed judgment, development was restricted to a total of three 10-acre lots.

{¶ 7} The purchases of the first two 10-acre lots (Mitchell's and Bott's) were the subject of litigation when Mahaffey allegedly breached the purchase contracts. Greene Case No. 2000 CV 307. The judgment entry in that case required Mahaffey to convey "good, marketable fee simple title" to the lots in question and to construct an access driveway "at his sole expense" over the 25-foot access easement. The judgment assumed, without

deciding, that Mahaffey, who still owned the third ten-acre lot at that time, would be the owner of the third house using the access driveway.

{¶ 8} Pursuant to the 1997 agreed judgment and the 2000 judgment, Mahaffey constructed a private drive on the access easement. The houses on the three 10-acre lots use this driveway as their primary means of access; Mahaffey also accesses his remaining 22 acres using this drive, although there is no residence on that property. Mahaffey testified that there is a shed on his property, in which he stores tools. The drive does not extend to Durell's property, which is the farthest from Spring Valley-Paintersville Road. Thus, Durell's property remains landlocked.

{¶ 9} In approximately 2001, Mahaffey became a member of the BZA.

{¶ 10} In 2003 and 2004, Durell took a number of steps aimed at building a house on his property. First, he sought a construction permit from the BZA, which sought to use the easement and the private drive to access his property. However, because Mahaffey (as the predecessor in interest to Miller) was then also seeking to construct a residence on one of the 10-acre lots, the BZA denied Durell's request for a construction permit. According to Durell, representatives of the BZA instructed him to request a variance instead. The BZA granted Durell's request for a variance insofar as the lot lacked the required frontage, but it denied Durell's request to access his land via the private drive. Instead, the BZA instructed him to access his property by constructing a separate private drive to Cemetery Road, which, according to Durell, was approximately 18 acres away from his property, over rugged terrain. Durell did not build such a road or a house on the property.

{¶ 11} In 2006, Durell filed a Complaint against Mahaffey for declaratory

judgment, unlawful interference with an easement, and slander of title. (Greene Case No. 06 CV 184). In June 2007, the trial court granted a declaratory judgment in Durell's favor, concluding:

> * * * The April 30, 1997 order, which the Court has viewed at length with the parties, materially provides that [Mahaffey] would be permitted three tracts, location unspecified, and three residences, also unspecified, to be served by a private lane to be constructed by [Mahaffey] and utilized for access by the contemplated residences to Spring Valley Paintersville Road.

> * * * [T]he April 30, 1997 decision in Case No. 95-CV-0461 does not reasonably specify the precise location of the permitted parcels. The intent of the parties, including but not limited to [Mahaffey's] provision for northerly access to [Durell's] * * * parcel by virtue of a deeded access easement over the private lane upon [Mahaffey's] property, the area of [Durell's] parcel itself being encompassed as a proposed building tract before the Spring Valley Township Board of Trustees, the conveyance of the lot first in time before all other lots conveyed from [Mahaffey's] tract, and [Mahaffey's] desire to construct upon portions of the property. [sic] By virtue of the foregoing, the Court hereby finds and orders that [Durell's] parcel, comprised of one of the proposed ten acre tracts together with residual acreage to the south is the first of three lots for which a variance has been granted by virtue of the order dated April 30, 1997 set forth in Case No. 95-CV-0461. * * *

It is the Order of the Court to all parties and the Spring Valley Township Board of Trustees that [Durell] is herewith granted authority to construct a single family residence upon the subject property * * * , there shall be no requirement for ingress and egress to or from the * * * tract owned by [Durell] excepting for the access easement set forth in [Durell's] deed of record to Spring Valley Paintersville Road. To the extent that this order is in conflict with any existing orders set forth in Case No. 95-CV-0461 or 2000-CV-307 this order shall take precedence.

{¶ 12}    In 2008, Mahaffey requested a variance from the BZA to allow him to build on the 22 acres that he still owned from the original parcel. The variance request related to the required frontage and the minimal lot dimensional requirements and, if granted, would have made Mahaffey's tract "a legal building lot in this A-10/Prime Agricultural District." Mahaffey proposed to access his property using the private drive on the access easement. Durell and Mitchell objected to Mahaffey's request for a variance on the grounds that the use of the property had already been determined in the 1997 agreed judgment and that Durell's similar request for a variance had been denied. The BZA held a hearing at which arguments and comments were presented from interested parties; briefs were also filed.

{¶ 13}    In March 2009, the BZA granted Mahaffey's request for a variance. Mahaffey abstained from the vote. The BZA concluded that the 1997 agreed judgment was a "voluntary compromise agreement," which did not constitute litigation on the merits, and that, although the trial court approved the agreement, the court had not "decided" the issue on the merits. Thus, the BZA concluded that the doctrine of res judicata did not prevent

further action on the property, as some of the neighbors had argued. In granting the variance, the BZA also concluded that "a significant change in circumstances" had occurred with respect to the property, and the variance would allow Mahaffey "much greater beneficial use" of the property than if he were not allowed to build a house on it. The nature of the changes in circumstances identified by the BZA will be discussed in greater detail below.

{¶ 14} Durell and Mitchell filed an Administrative Appeal and Complaint for Declaratory Judgment in the trial court. The Complaint pointed out the inconsistency between the BZA's treatment of Durell's request for a variance and Mahaffey's request, addressed the conflict of interest presented by Mahaffey's role on the BZA (although he abstained from the decision on this variance), and claimed that they (the adjacent property owners) were denied the opportunity to present evidence at the hearing. Durell and Mitchell requested that the trial court reverse the decision of the BZA, conduct a trial de novo, find that the new variance was prohibited by the 1997 agreed judgment related to the property, and enjoin the issuance of any certificate of zoning based on the variance. Upon the BZA's motion, the request for declaratory judgment was dismissed, and the matter proceeded only as an administrative appeal.

{¶ 15} The trial court denied Durell and Mitchell's request to present additional evidence in the trial court about the alleged conflict of interest within the BZA and their prior dealings with the BZA. This decision was based, in part, on the magistrate's conclusion that Durell and Mitchell had not been "prevented from" presenting such evidence in the administrative proceedings, but had chosen not to do so; the trial court

overruled Durell's objection to this finding and adopted the magistrate's decision. The trial court did hear arguments from the parties, but it based its decision on the record created in the administrative proceedings.

*The Trial Court's Decision*

{¶ 16} On January 25, 2012, the trial court issued its Judgment Entry on Administrative Appeal (Greene Case No. 09 CV 0402). In its judgment, the trial court listed the changes in circumstances cited by the BZA in support of its decision, which included 1) the creation of the three ten-acre lots, 2) the construction of the private drive "suitable for its purpose," as evidenced by its approval by the Spring Valley Fire Department, 3) the "approved creation" of a fourth parcel and "its subsequent improvement with a single family residence,"[1] and 4) the BZA's observation that Mahaffey "has regularly used the lane to access his property since 1987." The Court also noted the BZA's conclusion that "special conditions" existed preventing Mahaffey from constructing a single-family residence without a variance, and that these special conditions "[did] not result from the previous actions of" Mahaffey.

{¶ 17} The trial court disagreed with the BZA's conclusion, stating that the changes that the BZA referred to in its decision had all occurred after the BZA's denial of Mahaffey's variance request in 1995 and after the appeal of that denial to the trial court, which was resolved by the 1997 agreed judgment. The trial court concluded that the

---

[1] It is unclear by whom the creation of a fourth parcel was "approved"; the BZA may refer to the court's decision in Case No. 06 CV 0184, which required that Durell be given access to the private drive as the "first" of the three lots allowed by the 1997 agreed judgment. Also, we note that the trial court's judgment in this case contradicts the BZA's statement that a house has been built on Durell's lot.

22-acre parcel at issue in the current variance request was included within the parcel that was the subject of Mahaffey's 1995 variance request and 1997 agreed judgment, and that the BZA had therefore been incorrect in concluding that "the disposition of the remainder [Mahaffey's remaining 22 acres] was never addressed by the Court." The trial court concluded that the 22-acre parcel was "governed by the requirements" set forth in the 1997 agreed judgment "unless those requirements were changed by subsequent Court Order." Based on the requirements of the 1997 agreed judgment, the trial court concluded:

· The three 10-acre tracts, with residences thereon, "exhausted the maximum residential development permitted" by the 1997 agreed judgment; "a maximum of three houses were permitted to be built on the three surveyed 10 acre tracts along the private lane. And there has been no Court Order that modified or changed the Court-ordered maximum of three houses."

· The Court's judgment in Case No. 06 CV 0184, which resulted from Durell's prior litigation, "ORDERED that the Bill Durell tract * * * was the first of the lots created pursuant to the Agreed Judgment Entry in Case No. 95 CV 0461, and was entitled to access to Spring Valley Paintersville Road" via the access easement.

· The BZA's grant of a variance for Mahaffey to build a residence on the 22 acres still owned by him violated the 3-house maximum stated in the 1997 Agreed Judgment.

· The construction of the three residences on lots along the private lane "prompted the BZA not to approve Durell's use of the private lane, an

entitlement recognized by the Court" in Durell's prior litigation (Case No. 06 CV 0184).

· Because, in Case No. 06 CV 0184, the Court held that Durell's lot "was the first of three lots for which a variance was granted" in the earlier case (Case No. 05 CV 0461), Durell could not be required to access his property by any means other than the access easement contained in Durell's deed of record.

· The Court and the BZA "are bound by the Court's previous holding in Case No. 06 CV 0184 that granted Bill Durell authority to construct a single family residence [with] access to Spring Valley Paintersville Road" via the easement constructed by Mahaffey.

{¶ 18} Moreover, the trial court disagreed with the BZA's conclusion that "a sufficient change of circumstances existed to warrant granting [Mahaffey's] variance." The Court stated that the alleged changes in circumstances since the 1997 agreed judgment had all resulted from the "implementation of, conformance with, or disregard of the terms" of the agreed judgment by Mahaffey.

{¶ 19} In sum, the trial court concluded that Mahaffey should not have been granted a variance and that the BZA had "discriminated against Durell" when it denied his variance, as compared with its treatment of Mahaffey's request. The court remanded the matter to the BZA for it, "with guidance from the Court, [to] sort out this entire matter for the benefit of the Township and all affected Parties and residents" and for it to issue variances or accomplish zoning changes consistent with the court's conclusions and with the 1997 agreed judgment.

*The BZA's Argument on Appeal*

{¶ 20}     The BZA appeals from the trial court's judgment, raising one assignment of error.   The BZA asserts that the trial court erred in remanding to the BZA without expressly finding that the BZA had acted illegally or abused its discretion.   Specifically, the BZA argues that the trial court "never found that the decision of the BZA [was] unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record," as required by R.C. 2506.04.   Moreover, the BZA argues that its own determination that res judicata did not apply to bar Mahaffey's request for a variance was "a reasonable conclusion based on evidence in the record" and that the trial court abused its discretion "in substituting its judgment for that of the BZA."

*Standard of Review*

{¶ 21}     As the BZA has correctly stated, in an administrative appeal pursuant to R.C. Chapter 2506, the common pleas court considers the whole record, including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.   *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147-148, 735 N.E.2d 433 (2000); *Mordick v. Dayton*, 2d Dist. Montgomery No. 24663, 2012-Ohio-289, ¶ 14.

{¶ 22}     The Ohio Supreme Court has distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals.   R.C. 2506.04 "grants a more limited power to the court of appeals to review the

judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable, and probative evidence.'" *Henley* at 147. In other words, as an appellate court, our standard of review in an R.C. 2506.04 appeal is "more limited in scope." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). "The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial." *Id.*, citing *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261, 533 N.E.2d 264 (1988). *See also Cox v. Miami Cty. Bd. of Zoning Appeals*, 2d Dist. Miami No. 2010-CA-29, 2011-Ohio-2820, ¶ 5-6.

*Analysis*

{¶ 23} As a preliminary matter, the BZA asserts that the trial court erred in reviewing the BZA's determination that its actions on Mahaffey's variance request were not barred by res judicata. Whether the previous litigation over the zoning status and property rights related to this property were binding on the parties, and thus had a res judicata effect, is clearly a question of law. Thus, the trial court did not abuse its discretion in reviewing the BZA's interpretation of this issue. Likewise, because it is a question of law, we may review the trial court's conclusion on this issue. We agree with the trial court that the BZA's resolution of this issue was not entitled to deference on appeal.

{¶ 24} Additionally, the BZA argues that res judicata does not apply to granting a variance "upon a showing of changed circumstances." However, this argument disregards the fact that the variance not only modified a prior zoning decision, as is usually the case, but also conflicted with a judgment of the trial court. It also ignores the trial court's conclusion,

which is supported by the evidence, that the changes in circumstances since the denial of Mahaffey's 1995 request for a variance, upon which the BZA relied, fell into one of two categories: 1) they were "the natural and expected consequences" of the 1997 agreed judgment, or 2) they resulted from Mahaffey's disregard of the terms of the 1997 agreed judgment. The trial court reasonably concluded that such "changes in circumstances" were entitled to little weight and did not have greater force than the 1997 agreed judgment.

{¶ 25} The BZA also contends that the trial court's judgment was improper because the court did not expressly find that the BZA's decision was "illegal, arbitrary, capricious, unreasonable, or unsupported" by the record, as required by R.C. 2506.04. Although it is true that the trial court did not use these terms, it is clear from the trial court's findings that it found the disparate treatment of Durell's and Mahaffey's requests for variances to be arbitrary and unreasonable. Moreover, the trial court implicitly found the BZA's decision to be illegal insofar as it conflicted with the 1997 agreed judgment. In other words, the trial court made the findings necessary to support its decision to reverse the BZA's decision, although it did not use the language of the statute.

{¶ 26} The BZA claims that it properly applied the factors set forth in *Duncan v. Middlefield*, 23 Ohio St.3d 83, 491 N.E.2d 692 (1986) in granting Mahaffey's variance in 2009. *Duncan* outlined a list of factors to be applied in deciding whether landowners had encountered "practical difficulties" in using their property. In our view, however, Mahaffey's prior consent to an agreed judgment about the use of the property eliminated the relevance of the *Duncan* factors to his subsequent application for a variance.

{¶ 27} The BZA further asserts that a recent decision of this court, *Garringer v.*

*New Jasper Twp. Bd. of Zoning Appeals*, 2d Dist. Greene Nos. 2009-CA-50 and 2009-CA-59, 2010-Ohio-6223, supports its argument that the *Duncan* factors were the correct factors to apply in this case. According to the BZA, Spring Valley Township Zoning Resolution § 802.1 is identical to New Jasper Township Zoning Resolution § 802.1, which relates to "Single Non-Conforming Lots."[2] The sections provide, in pertinent part:

> In any district in which single-family dwellings are permitted, a single family dwelling may be erected on any single lot of record at the effective date of adoption of this amendment, not withstanding [sic] limitations imposed by other provisions of this Resolution. * * * This provision shall apply even though such lot fails to meet the requirements for area or width, or both, that are applicable in the district.

Construction was subject to other height, lot coverage, and density restrictions.

{¶ 28} Durell and Mitchell correctly point out that the BZA did not raise this argument in the trial court, and thus it has been waived. Moreover, even assuming, for the sake of argument, that the 1997 agreed judgment did not exist, we would find that the Single Non-Conforming Lot provision, and thus the holding in *Garringer,* is inapplicable to the facts of this case. The Garringers sought to build a single residence on 55 acres of landlocked agricultural property that lacked the required road frontage; like Mahaffey, the Garringers accessed their property via an easement. When the Garringers sought a variance

---

[2]Neither zoning ordinance is contained in the record, but we will assume, for the sake of this discussion, that the ordinances are identical. The New Jasper zoning resolution is quoted in *Garringer. Id.* at ¶ 16.

from the frontage requirement, the BZA denied it, finding that the Garringers had not established an unnecessary hardship or practical difficulty. *Id.* at ¶ 6. On appeal, the trial court disagreed, concluding that the zoning resolution allowed a house to be built on the property, and it ordered the BZA to grant the variance. We agreed with the trial court's reasoning, but we found that a variance was unnecessary. *Id.* at ¶ 23. We remanded for the trial court "to order the [BZA] to grant a building permit to construct a single family dwelling" on the property.

{¶ 29} The zoning resolutions at issue in *Garringer* and in this case apply to "any single lot of record at the effective date of adoption" of the amendment. There is no indication in *Garringer* that the property on which the owners sought to construct a home had been divided or otherwise modified subsequent to the adoption of the resolution. Although it is unclear when the Spring Valley Zoning Resolution was adopted, there is no suggestion in this record that Spring Valley Township Zoning Resolution § 802.1 was adopted during the course of these proceedings, i.e. more recently than 1995, when Mahaffey sought the original variance. Several divisions of Mahaffey's property were accomplished after that time, and Mahaffey's remaining 22-acre lot therefore was not "of record" when the zoning resolution was adopted. Accordingly, the rationale of *Garringer* would not apply.

{¶ 30} The BZA correctly points out that, when Durell's variance was denied in 2004, the trial court had not yet ruled (in Case No. 06 CV 0184) that Durell's lot was "the first of three lots for which a variance ha[d] been granted" by means of the 1997 agreed judgment. To the BZA, this fact suggests that it could not have discriminated against Durell in denying the 2004 variance application, at which point his priority had not yet been

established, and that, by the time of Mahaffey's application in 2008, the 2006 decision had "eviscerated the original 1997 agreement that only three residences should be constructed along the private lane."

{¶ 31} As far as we can tell from this record, the owners of the four lots which have been divided from Mahaffey's original lot since 1995 – Durell, Mitchell, Miller, and Bott – bore no responsibility for Mahaffey's non-compliance with the 1997 agreed judgment. They, or their predecessors in interest, each purchased their lots with the understanding with they would be permitted access via the private drive, and their deeds contained easements to that effect. We understand that these events put the BZA in the difficult position of either denying Durell's 2004 request for a variance to allow construction on his property or failing to comply with the 1997 agreed judgment by allowing four properties to use the private drive. We also understand the trial court's disapproval of the BZA's costly and perhaps impracticable solution that Durell be required to built a separate private drive to Cemetery Road, although the trial court's characterization of the decision as "discrimination" might have been overstated on the record before us.

{¶ 32} Nonetheless, we disagree with the BZA that the 2006 decision granting Durell access to Mahaffey's private drive necessarily "eviscerated" the 1997 agreed judgment, such that it placed no limitation on further development of Mahaffey's land. The trial court reasonably concluded that Mahaffey's request for further development along the private drive was in contravention of the court's 1997 agreed judgment and of the rights of the other property owners.

{¶ 33} The assignment of error is overruled.

*Conclusion*

{¶ 34}    The judgment of the trial court will be affirmed insofar as it concluded that the BZA improperly granted Mahaffey's request for a variance, and the variance granted to Mahaffey will be vacated.   There is no other matter to "sort out."   The 1997 agreed judgment remains, although effectively modified by subsequently approved building.    By virtue of the declaratory judgment in Case No. 06 CV 0184, Durrell has authority to build on his lot and to access his property via the private drive built by Mahaffey and shared by the other properties.   Because there is no other issue to be resolved, we will modify the trial court's judgment insofar as it remanded the matter to the BZA for it to "sort out this entire matter for the benefit of the Township and all affected Parties and residents" with the benefit of the court's guidance; no further action by the BZA is appropriate based on these proceedings.

. . . . . . . . . .

HALL, J. and CELEBREZZE, J., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

B. Randall Roach
Elizabeth A. Ellis
Hon. Stephen A. Wolaver

| | |
|---|---|
| Case Name: | *Bill Durell, et al. v. Spring Valley Township Board of Zoning Appeals, et al.* |
| Case No.: | Greene App. No. 2012 CA 23 |
| Panel: | Froelich, Hall, Celebrezze |
| Author: | Jeffrey E. Froelich |