[Cite as *Rauch v. Jefferson Twp. Bd. of Zoning Appeals*, 2018-Ohio-4233.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STEVEN R. RAUCH, et al. | : | |
| | : | |
| Plaintiff-Appellee/Cross-Appellant | : | Appellate Case No. 27743 |
| | : | |
| | : | Trial Court Case No. 2016-CV-4930 |
| v. | : | |
| | : | (Civil Appeal from |
| JEFFERSON TOWNSHIP BOARD OF ZONING APPEALS, et al. | : | Common Pleas Court) |
| | : | |
| | : | |
| Defendants-Appellants/Cross-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of October, 2018.

. . . . . . . . . . .

SCOTT A. KING, Atty. Reg. No. 0037582 and TERRY W. POSEY, JR., Atty. Reg. No. 0078292, Austin Landing I, 10010 Innovation Drive, Suite 400, Dayton, Ohio 45342
    Attorneys for Plaintiff-Appellee/Cross-Appellant

JEFFREY C. TURNER, Atty. Reg. No. 0063154, DAWN M. FRICK, Atty. Reg. No. 0069068, and KEVIN A. LANTZ, Atty. Reg. No. 0063822, 8163 Old Yankee Street, Suite C, Dayton, Ohio 45458
    Attorneys for Defendants-Appellants/Cross-Appellees

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Steven Rauch filed a request for a conditional use permit allowing him to operate a commercial composting facility on his farm located in Jefferson Township. The Jefferson Township Board of Zoning Appeals (BZA) issued the permit but included certain restrictions and requirements therein. Rauch filed an administrative appeal. The Montgomery County Court of Common Pleas affirmed three of the restrictions and reversed three of the conditions. The BZA, along with the Jefferson Township Board of Trustees and the Jefferson Township Zoning Director, filed an appeal. Rauch filed a cross-appeal. For the reasons outlined below, we affirm.

## I. Facts and Procedural History

**{¶ 2}** Steven Rauch is the owner of a 161.322-acre property located in Jefferson Township. The property is zoned as agricultural. In March 2014, Rauch applied for a zoning permit to develop a compost production facility on the property.[1] According to the application, the facility would produce commercial-grade compost for sale as well as for use on the farming portion of the property. The facility would be licensed as a Class II composting operation, regulated by the Ohio Environmental Protection Agency (hereinafter "OEPA"). Ohio Adm.Code 3745-560-02(C)(2) provides that a Class II composting facility is one "where the owner or operator may accept yard waste, agricultural waste, animal waste, food scraps, bulking agents, additives, and authorized alternative materials."

---

[1] Compost is a "mixture that consists largely of decayed organic matter and is used for fertilizing and conditioning land." Webster's Ninth New Collegiate Dictionary, 270 (1988).

{¶ 3} The application was denied, and Rauch appealed to the BZA. The BZA conducted a public hearing on the application. Dan Wampler, Rauch's partner, provided information regarding the construction design plan. Rauch also presented testimony from Ryan Morrissey, a civil engineer who performed the site grading for the facility, and Mohammed Haque, an engineer with expertise in geo-technical engineering. Finally, Rauch presented a video presentation of his expert, Dr. Fred Michel.[2] Michel was an associate professor at the Ohio State University Department of Food, Agricultural and Biological Engineering. His position involved research and teaching in areas related to solid waste management and composting. He had researched composting for 25 years, including visiting 50 composting facilities in the United States and internationally. Since 2000, he had taught a class entitled "Ohio Compost Operator Educator Course." He had published peer-reviewed papers on composting and was an editor of a peer-review journal titled *Compost Science and Utilization*. Michel had also served as an expert witness in zoning board cases and had testified in state and federal courts regarding composting materials and odor production.

{¶ 4} According to the record, the site design plan provided that the Rauch facility would be limited to ten acres located in the center portion of the 161-acre property. The properties to the north, south and west of the Rauch property were also farms. To the east of the composting area was a large wooded area. Some single-family residences were located beyond the wooded area, approximately one-half mile from the proposed facility.

{¶ 5} The record contains evidence that the Rauch facility would accept

---

[2] Michel was unable to attend the public hearing due to medical issues.

compostable materials, known as feedstock, from outside sources. Feedstock is defined as "a solid waste that will readily decompose during the composting process including but not limited to yard waste, agricultural waste, animal waste, food scraps, animal carcasses, raw rendering material, and mixed solid waste." Ohio Adm.Code 3745-560-02(F)(1). The facility would also accept materials known as bulking agents from outside sources. Bulking agents consist of materials "added to a composting process to provide structural support, improve aeration, or absorb moisture and includes wood chips, straw, clean untreated wood, shredded newspaper, shredded cardboard, sawdust, shredded brush, compostable containers, and stover." Ohio Adm.Code 3745-560-02(B)(2).

{¶ 6} The proposed composting facility consisted of a storage area for finished compost product; a feedstock and bulking agent storage area; and an active composting area on a concrete pad. The active composting concrete pad would occupy approximately three acres of the facility. The feedstock would be blended with bulking agents and additives and then placed in elongated rows, referred to as windrows, on the concrete pad.[3] The windrows would then be covered with six inches of biofilter material, which is defined as "material consisting of bulking agents, shredded yard waste, or compost that is applied over the composting mixture to control odors, dust, or vectors." Ohio Adm.Code 3745-560-02(B)(1). Materials would be brought in daily by as many as five trucks. Therefore, the facility would also have a wheel washing area for the trucks to ensure that dust, mud and compost from the facility were not carried off the property

---

[3] Additives are a "supplemental material mixed with or otherwise added to feedstocks and bulking agents to create a favorable condition for the composting process and includes urea, crushed egg shells, earthworms, and bacterial or fungal inoculum." Ohio Adm.Code 3745-560-02(A)(3).

onto local roads. The entire facility would be designed to drain into a two and one-half acre aerated leach pond. The pond would be constructed with a 3-foot compacted clay liner to prevent seepage out of the pond. The ten acres would also be surrounded by a four-foot berm constructed with a water-tight seal. The pond, along with the berm, would be large enough to contain two years of rainwater.

{¶ 7} After the hearing, the BZA issued a decision denying the application, and Rauch filed an administrative appeal in the Montgomery County Court of Common Pleas. As authorized by R.C. 2506.03(A)(3), the court conducted a hearing during which Michel was permitted to provide sworn testimony. Thereafter, the court reversed the decision of the BZA and remanded the matter to the BZA with instructions to issue a conditional use permit to Rauch. The BZA filed an appeal with this court, which we dismissed for lack of standing. *Rauch v. Jefferson Twp. Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 26941, 2016-Ohio-967, appeal not allowed, 146 Ohio St.3d 1430, 2016-Ohio-4606, 52 N.E.3d 1205.

{¶ 8} On August 18, 2016, the BZA held a public hearing, following which it issued a conditional use permit to Rauch with a list of conditions upon the proposed production site. The conditions relevant to this appeal are:

Site Conditions:

1. The applicant shall submit a final site plan that is approved by the Ohio EPA.

2. If there are any changes to the site plan during the licensing process, the Board of Zoning Appeals must review and consider any modifications.

* * *

Operations Conditions:

* * *

6. Off-site Feedstock and bulking agents cannot be brought onto the composting site to be processed or prepared (chopping, chipping, or grinding etc.). No equipment that can be used for such purposes [examples industrial chippers, tub grinders etc.] can be stored or operated at the site.

7. The approved list of Feedstock materials that may be processed at the site is limited as follows:

    A. Yard wastes – shall be limited to leaves, grass clippings, brush, garden waste, woodchips, chips from the pruning from trees or shrubs, and saw dust;

    B. Agricultural waste – as defined in OAC 3745-560-02(A)(4), is limited to be sourced from the Bear Creek operation only;[4]

    C. Animal wastes – as defined in OAC 3745-560-02(A)(8), is limited to be sourced from the Bear Creek operation only;

    D. Food scraps – shall be limited to fruits and vegetables, grains and grain derivatives, coffee and coffee derivatives, and tea and tea derivatives;

    E. The use of any materials beyond this list including an application to the OEPA Director for Alternative materials will be considered an

---

[4] The reference to "the Bear Creek operation" is due to the fact that a waterway known as Bear Creek runs through the tree-line located to the east of the composting facility.

application for the expansion of the conditional use, thus requiring approval by the BZA.

* * *

10. Equipment Cleaning – An equipment cleaning area shall be provided on the site. All equipment used in the operation shall be cleaned daily to prevent odors and other nuisances or health hazards.

* * *

Other Conditions:

1. The Board requires a 6-month review after the issuance of the Zoning Certificate, and a one-year review to assess the impact of the proposed facility to determine compliance with these conditions. * * *

Dkt. No. 16, Exh. A.

{¶ 9} The Ohio Administrative Code sets forth definitions of each type of compost product that a Class II facility may accept. Yard waste is defined as "solid waste that includes only leaves, grass clippings, brush, garden waste, tree trunks, tree stumps, holiday trees, prunings from trees or shrubs, and vegetative waste resulting from the use of commercial products, including but not limited to discarded flowers, potted flowers, or grave blankets that do not include plastic, metal, styrofoam, or other non-biodegradable material. Yard waste does not include wastes from industrial processing, agricultural processing, or food processing." Ohio Adm.Code 3745-560-02((Y). Agricultural waste consists of "plant material including but not limited to stems, leaves, vines, or roots from an agricultural operation." Ohio Adm.Code 3745-560-02(A)(5). Animal waste includes "animal excreta, bedding, wash waters, incidental waste feed, and silage drainage."

Ohio Adm.Code 3745-560-02(A)(9). Food scraps are "food residuals including but not limited to vegetables, fruits, grains, dairy products, meats, and the compostable packaging that may be commingled." Ohio Adm.Code 3745-560-02(F)(2). Authorized alternative materials consist of "waste that might be suitable for use as a feedstock, bulking agent, or additive in the composting process including but not limited to animal carcasses, raw rendering material, and exceptional quality biosolids." Ohio Adm.Code 3745-560-02((A)(7).

{¶ 10} Rauch filed an administrative appeal in the common pleas court objecting to the above-cited conditions. Rauch argued that there was no evidence to support the imposition of the conditions.

{¶ 11} The court affirmed the BZA decision regarding Site Conditions 1 and 2 as well as Other Conditions 1. The court, however, reversed the decision regarding Operations Conditions 6, 7 and 10. An appeal was filed by the Jefferson Township BZA, the Jefferson Township Board of Trustees, and the Jefferson Township Zoning Director. Rauch filed a cross-appeal.

## II. Standard of Review

{¶ 12} "The standards of review for a court of common pleas and an appellate court differ considerably when an administrative appeal is involved." *Gem City Metal Spinning Co. v. Dayton Bd. of Zoning Appeals,* 2d Dist. Montgomery No. 22083, 2008-Ohio-181, ¶ 17. A common pleas court "must 'determine whether there exists a preponderance of reliable, probative, and substantial evidence to support' [an agency's] decision." *In re Application for Conditional Use of Watkins*, 2d Dist. Montgomery No. 17723, 2000 WL

192430, *2 (Feb. 18, 2000), quoting *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979). "Further, the [common pleas] court must presume that the agency decision is 'reasonable and valid.' " *Id.*, quoting *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals*, 66 Ohio St.3d 452, 456, 613 N.E.2d 580 (1993). When an R.C. Chapter 2506 administrative appeal is filed, the common pleas court must "consider the whole record, including any new or additional evidence admitted under R.C. 2506.03, and then determine whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." (Citation omitted.) *Durell v. Spring Valley Twp. Bd. of Zoning Appeals*, 2d Dist. Greene No. 2012 CA 23, 2012-Ohio-5098, ¶ 21. However, an appellate court's review of a common pleas court's decision regarding an agency order is limited, on a question of fact, to an abuse of discretion standard. *Lamar Outdoor Advertising v. Dayton Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 18902, 2002 WL 1349600, *2 (June 21, 2002). An abuse of discretion occurs when the common pleas court's decision is unreasonable, arbitrary, or unconscionable. *Id.*, citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). "However, regarding questions of law, our review is de novo." *Id.*

### III. Township's Contentions

{¶ 13} The Township's sole assignment of error is as follows:

THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE

OF THE APPELLANTS/CROSS-APPELLEES WHEN IT REVERSED THE

BOARD OF ZONING APPEALS' DECISION AS TO OPERATING

CONDITIONS 6, 7 AND 10.

{¶ 14} The Township contends the common pleas court erred in finding that operating conditions 6, 7 and 10 were arbitrary and capricious and that they were not supported by a preponderance of the reliable, probative and substantial evidence. The essence of the Township's argument is based upon its claim that the conditions were designed to reduce the potential for foul odors emanating from the site by decreasing the intensity of use on the proposed site. The Township contends that the testimony of Wampler and Michel supported the imposition of the conditions.

{¶ 15} We turn first to operating condition 6, which banned the on-site processing or preparation of off-site feedstock and bulking agents as well as the storage or operation of equipment used for such purposes. The Township claims that Michel's testimony supports this ban as he testified that materials brought in from off-site are usually the cause of odors at composting facilities and that the facility cannot control the odor of off-site materials. The Township also contends Wampler testified that the facility did not intend to process or prepare materials brought onto the site, and that such testimony supported the imposed condition.

{¶ 16} Michel testified that, in his experience, when a composting facility is properly operated, the odors caused by composting materials, if any, are minimal and do not go past the concrete pad. He further testified that, in this case, if any odors did escape the pad, they would not go beyond the property boundaries as the tree-line on the property would be a significant odor buffer between the facility and the homes to the east of the property. However, he also admitted that foul odors can occur if a supplier brings in materials that have been permitted to decompose in an anaerobic manner. In such

cases, Michel testified that the facility can only minimize the odor of such materials by combining it into the windrows and covering the windrows with biofilters.

{¶ 17} Based upon this testimony, we understand that the Township's ban upon the on-site processing and preparation of off-site materials was intended to reduce the amount of time such materials were permitted to be on-site before being combined into the biofilter-treated windrows. In other words, the Township believed that any unprocessed or unprepared odorous materials would have to be on-site for a longer period before being combined into treated windrows than if brought on-site already prepared and ready to be placed into the windrows.

{¶ 18} Significantly, Michel did not testify that material brought in from off-site was necessarily odorous. Instead, he testified that it **may** be odorous. The ban on processing all materials brought to the site necessarily excludes even materials that are not odorous when brought to the facility. Further, such a ban does not automatically eliminate the lag-time caused by processing and preparing. The record indicates that all materials brought in on any given day should be incorporated into windrows by the end of business that day in order to minimize odors. Thus, any materials brought to the site, processed or unprocessed, would not necessarily be placed immediately into windrows and could sit on-site for the same amount of time before being combined into a windrow. Finally, the Township's goal could have been achieved by a less broad condition such as requiring Rauch to ensure that his suppliers did not bring any odorous materials onto the site. Thus, we conclude that the court did not abuse its discretion in concluding that Michel's testimony did not support such a ban.

{¶ 19} The Township also claims Wampler testified the facility would not process

or prepare any materials because it did not have the equipment for doing so. Thus, the Township contends that the ban on preparation and processing of materials brought in from off-site was in accord with Wampler's testimony. The Township further argues that because the court, in its decision, found that Wampler's testimony was referring solely to bulking materials, it improperly discounted the probative value of Wampler's statements, and thus, failed to consider the entire record when it invalidated the condition.

{¶ 20} A review of the record indicates, that when asked whether the facility would make its own "woodchips or mulch or otherwise called bulking agent on the site," Wampler replied, "probably not." Exh. B, p. 29. He then qualified the answer by stating that the facility would bring in woodchips because it did not have the equipment for making them. He also stated that the main bulking agents at the site would consist of woodchips and corn stover. His testimony regarding the bulking material appeared to be restricted to the processing of woodchips and not to the corn stover, but it certainly did not encompass feedstock materials received from off-site.

{¶ 21} We find no basis for concluding that the court ignored or discounted Wampler's testimony by accurately noting what the actual testimony provided. Further, we cannot say that the court abused its discretion by finding that Wampler's testimony did not support a ban on the processing or preparing of all materials brought in from off-site.

{¶ 22} Based upon the record, we cannot say that the trial court abused its discretion by determining that operating condition 6 was arbitrary and not supported by the evidence.

{¶ 23} We next address operating condition 7 which, relevant to this appeal, limited

the types of feedstocks available to the facility by omitting tree trunks, tree stumps and holiday trees by using the Ohio Administrative Code definition of yard waste, and by excluding dairy products, meats and compostable packaging, by using the Code's definition of food scraps. The Township contends that Wampler's testimony supported the exclusion related to yard waste because he testified that the facility would not recycle Christmas trees. The Township further contends that the fire hazard presented by the presence of tree trunks, stumps and Christmas trees necessitated the omission. The Township further argues that Michel's testimony supported the exclusion of dairy, meats and compostable packaging.

{¶ 24} Michel did testify that food scraps used in composting create more potential for odor production. However, he also testified that "the [Rauch] site is designed to handle the types of feedstocks that are received. It's controlled by the windrow size, use of the biofilters and those sort of operating processes, the moisture content and other things of the material." Dkt. No. 16. As noted above, he also testified that a properly-operated facility should not produce odors that leave the area of the concrete pad. He testified that, as part of his work, he was involved with a similar operation which did not produce odors that extended beyond the concrete pad. Michel also noted that the property's current agricultural zoning permits it to use manure as a fertilizer, which, he noted, would produce stronger odors than the composting facility. In short, there was no evidence presented that having dairy and meat products in the food scraps would, in a proper composting operation, create more odor than any other type of waste or that it would be more likely to escape the property boundaries. Further, there was absolutely no evidence that compostable packaging would cause any odor.

{¶ 25} With regard to the exclusion of trees, we note that Wampler merely testified that the facility had "no plans" and "probably would not" utilize Christmas trees as feedstock because they take longer to break down. Contrary to the Township's claim, Wampler did not, even when specifically asked, state that the facility would exclude such trees. Wampler also testified that any fire hazards would be addressed by the fact that the materials were on a concrete pad and that the facility was contemplating the installation of a large water pump to deal with any potential fires. We also note that, while the Township argues that common sense and personal experience permit the finding that dry Christmas trees, tree stumps and trunks pose a fire hazard, there was no expert testimony presented to indicate that compost windrows containing such material have a higher potential for fire than windrows lacking such material. Indeed, the OEPA's inclusion of such products in its definition of usable materials tends to refute this claim.

{¶ 26} Again, we cannot conclude that the common pleas court abused its discretion in determining that the evidence did not support the limitations operating condition 7 placed on the types of materials used for composting or that such limitations were arbitrary.

{¶ 27} Finally, we address operation condition 10, which required the facility to wash, on a daily basis, all equipment used in the composting operation. The Township argued that, since Rauch agreed to install a wheel-washing station to clean truck tires leaving the site, common sense indicated that washing all equipment daily would reduce odors. The Township states that "[e]ven lay people know that a good washing removes odors." It also argued that Michel testified that odiferous matter would be used by the facility and that the facility had no control over odorous material brought onto the site.

{¶ 28} Again, the record does not support a finding that the facility would actually receive foul smelling materials. Further, there was no evidence that equipment used in a properly operated composting facility would become odorous. Thus, we cannot conclude that the court abused its discretion in finding that this limitation is arbitrary and unsupported by the evidence in the record.

{¶ 29} The Township has failed to demonstrate that the court abused its discretion or that the proposed limitations were supported by the record. Accordingly, the sole assignment of error presented by the Township is overruled.

### IV. Rauch's Contentions

{¶ 30} Rauch advances the following as his sole assignment of error:

THE TRIAL COURT ERRED IN PERMITTING THE SECOND BZA DECISION TO CONTAIN CONDITIONS THAT WERE NOT EXPRESSLY AGREED TO.

{¶ 31} Rauch contends that all of the operations, site and other conditions listed in the conditional use permit are barred by the doctrine of res judicata. He further contends that the BZA lacked the power, on remand, to hold an additional hearing and take additional evidence. Finally, he contends that the conditions permitting the BZA to conduct reviews of the permit are illegal.

{¶ 32} We begin with the claim that the BZA was not permitted to conduct an additional evidentiary hearing on remand. Rauch cites *Mad River Sportsman's Club, Inc. v. Jefferson Twp. Bd. of Zoning Appeals*, 92 Ohio App.3d 273, 277, 634 N.E.2d 1046 (3d Dist.1993) for the proposition that "[t]here is nothing in this statute [R.C. 2506.04]

authorizing the common pleas court to remand the case to the administrative body for an additional hearing and then to issue an order consistent with the facts established at that hearing." *Id.*, citing *Williamson v. Chester Twp. Trustees*, 18 Ohio App.2d 188, 247 N.E.2d 789 (11th Dist.1969); *Ruggiero v. Brooklyn Bd. of Zoning Appeals*, 197 N.E.2d 828 (8th Dist.1964). However, as noted by the common pleas court, the *Mad River* holding has been abrogated by *State ex rel. Chagrin Falls v. Geauga Bd. of Commrs.*, 93 Ohio St.3d 400, 2002-Ohio-4906, 775 N.E.2d 512, wherein the Supreme Court of Ohio stated:

> In *Superior Metal Products, Inc. v. Ohio Bur. of Emp. Serv.*, 41 Ohio St.2d 143, 146, 324 N.E.2d 179 (1975), we held that "a court's remand effectuates a revival of jurisdiction over a cause which may enable the subordinate tribunal or administrative body to conduct further proceedings and to render a new decision. Although *Superior Metal* did not involve an R.C. Chapter 2506 appeal, appellate courts have applied it and held that common pleas courts have authority in R.C. Chapter 2506 administrative appeals to remand for further proceedings, including a new hearing. See, e.g., *Neary v. Moraine Bd. of Zoning Appeals* (July 30, 1999), 2d Dist. No. 17428, 1999 WL 960777

*Id.* at ¶ 8.

**{¶ 33}** The Supreme Court further stated that "the additional language in R.C. 2506.04 regarding remanding the cause with instructions to 'enter an order, adjudication, or decision consistent with the findings or opinion of the court' does not prohibit the administrative tribunal or officer to which a cause is remanded from conducting further

proceedings[.]" *Id.* at ¶ 10, citing *Neary v. Moraine Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 17428, 1999 WL 960777 (July 30, 1999), at *12-13.

{¶ 34} Thus, we conclude that Rauch's argument in this regard lacks merit.

{¶ 35} We next turn to the claim that the conditions imposed by the BZA are barred by the doctrine of res judicata. In support, Rauch argues that the conditions were noted in the BZA's Staff Comments made during the first hearing before the BZA, and that the BZA failed to raise the conditions in its first administrative appeal to the common pleas court. We agree with the conclusion of the common pleas court that the "issue previously litigated was not the imposition of conditions, but whether a preponderance of the evidence supported the denial of a conditional use permit." Dkt. No. 28, p. 17. Thus, we conclude that res judicata does not bar the imposition of conditions by the BZA.

{¶ 36} Finally, Rauch contends that Site Conditions 1 and 2, and Other Conditions 1 are illegal because review of a conditional use permit is not authorized under the Township's zoning regulations and because R.C. 519.24 and 519.23 are the only enforcement mechanisms available after the issuance of a conditional use permit.

{¶ 37} Section 406.05 of the Township Zoning Resolution provides:

In granting a conditional use certificate, the Board may impose such conditions, safeguards and restrictions upon the premises benefitted by the Conditional Use as may be necessary to comply with the standards set out in Subsection 406.04 to reduce or minimize potentially injurious affects [sic] of such Conditional Uses upon other property in the neighborhood and to carry out the general purpose and intent of this Resolution.

{¶ 38} We agree with the common pleas court that the Township Zoning

Resolution is broad enough to allow the BZA to impose conditions, such as a review, that it deems necessary to ensure compliance with the zoning standards.

{¶ 39} R.C. 519.24 creates a cause of action to enjoin or abate violations of zoning regulations against landowners who use or propose to use their property in violation of R.C. 519.01 through 519.99. The statute also applies to a violation of "any regulation or provision adopted by any board of township trustees." *Id.* Similarly, R.C. 519.23 creates a criminal cause of action for the use of a building or land in violation of a township zoning resolution. Neither of these statutes are inconsistent with a zoning regulation or resolution allowing a BZA to review the use of property to ensure that it complies with its zoning regulations.

{¶ 40} We conclude that the court did not err in concluding that Other Conditions 1 and Site Conditions 1 and 2 were valid.

{¶ 41} We conclude that the record supports the findings of the court regarding the conditions contested by Rauch. Accordingly, Rauch's sole assignment of error is overruled.


### V. Conclusion

{¶ 42} The assignments of error raised by both parties being overruled, the judgment of the court of common pleas is affirmed.


. . . . . . . . . . . . .


FROELICH, J. and HALL, J., concur.

Copies sent to:

Scott A. King
Terry W. Posey, Jr.
Jeffrey C. Turner
Dawn M. Frick
Kevin A. Lantz
Daniel Brown
Hon. Mary Lynn Wiseman